**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| CAROLYN CLARK, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF LOUISIANA, DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, PUBLIC SAFETY SERVICES OFFICE OF MOTOR VEHICLES; and KEVIN W. REEVES, in his official capacity only, | ) ) ) ) ) |
| Defendants. | |

**COMPLAINT**

NOW COMES Plaintiff, Carolyn Clark, by and through undersigned counsel, who file this Complaint. In support, she states the following:

**I.     INTRODUCTION**

1. Driving facilitates the movement of people and goods and is an important aspect of Louisiana society. The State of Louisiana, Department of Public Safety & Correction, Office of Motor Vehicles, has implemented rules and regulations to govern and control the testing and licensure of Louisiana drivers and to issue and renew drivers' licenses.

2. Alarmingly, however, Defendants have implemented policies and procedures that facially discriminate against individuals with disabilities, including Ms. Clark

3. Even worse, on Friday, September 20, 2019, Ms. Clark requested a reasonable accommodation, which was denied, and her valid concern about the State's violation of her rights was openly mocked by Defendants' employee.

4. Defendants' treatment of Ms. Clark violates federal anti-discrimination laws. Ms. Clark now seeks injunctive and declaratory relief, damages (compensatory and nominal), and attorneys' fees/costs for the Defendants' disparate treatment discrimination and failure-to-

accommodate.

5. With regards to Ms. Clark's request for nominal damages, it is her position that even an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against the State of Louisiana, regardless of the amount, would deter the State of Louisiana from discriminating against individuals with disabilities in the future.

## II. JURISDICTION AND VENUE

6. Ms. Clark's claims arise under federal civil rights law. This Court has jurisdiction over Ms. Clark's claims of federal rights violations under Title II of the Americans with Disabilities Act and the Rehabilitation Act, which are enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7. The venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to these claims occurred in East Baton Rouge Parish, which is situated in the Middle District of Louisiana.

## III. THE PARTIES

8. Ms. Clark is an individual with a disability residing in East Baton Rouge Parish, Louisiana. She is of suitable age and capacity to file this suit.

9. Ms. Clark is a person with a disability. *See* 42 U.S.C. § 12132. Ms. Clark has significantly impaired ability to stand and walk.

10. As a result of her disability, Ms. Clark requires a wheelchair for mobility.

11. Ms. Clark's disability prevents her from engaging in major life activities such as walking and standing. *See* 28 C.F.R. § 35.104(2).

12. Colonel Kevin W. Reeves is the Deputy Secretary for the Department of Public Safety & Corrections. As the Deputy Secretary, he oversees the Office of Motor Vehicles.

Defendant Reeves is sued in his official capacity for injunctive and declaratory relief and attorneys' fees/costs.

13. The State of Louisiana, Department of Public Safety & Corrections, Public Safety Services Office of Motor Vehicles is an agency of the State of Louisiana. It is a recipient of federal financial assistance as that term is used in the Rehabilitation Act.

14. Collectively, both defendants are referred to as "the State of Louisiana."

## IV. FACTS

### A. Ms. Clark Seeks to Update Her Driver's License with Her New Address.

15. Ms. Clark has a driver's license issued by the State of Louisiana.

16. Ms. Clark is enrolled at Louisiana State University and is pursuing a Ph.D. in Virology.

17. As a student, Ms. Clark frequently changes residences based on her ever-changing schedule, budget, and personal situation.

18. Ms. Clark is aware of the legal requirement to update her driver's license and car registration.

19. As a law-abiding citizen, Ms. Clark makes it a habit to update her driver's license and car registration, as required by State law.

20. Having recently moved to a different residence in the City of Baton Rouge, on Friday, September 20, 2019, Ms. Clark went to the Louisiana Office of Motor Vehicles in Baton Rouge to update the address on her driver's license and car registration.

21. Ms. Clark was using her wheelchair when she arrived at the Office of Motor Vehicles. After waiting in line, Ms. Clark was summoned forward and informed the employee that she was there to update the address on her driver's license.

22. Instead of reissuing Ms. Clark's driver's license with the updated address, the State

of Louisiana's employee handed Ms. Clark a lengthy, three-page document entitled "Medical/Vision Examination Form."

23. Ms. Clark was informed that she had thirty (30) days to have the form completed by a doctor and to file the answers with the Office of Motor Vehicles. Ms. Clark was informed that if she did not have the form completed, her license would be suspended.

24. Ms. Clark was shocked and took the form back to her home for evaluation.

25. The form requires Ms. Clark to answer invasive questions related to a wide array of medical issues that have nothing to do with her disability, limitations, or ability to operate a motor vehicle.

26. For example, through the form the State of Louisiana demanded that Ms. Clark to answer questions about the function of her pancreas, her hearing, and her mental health—even though Ms. Clark's disability has no relation to those bodily functions.

27. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose whether Ms. Clark has "any neurological disorder."

28. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose whether Ms. Clark—who is twenty-three years old—has "any signs of Parkinsonism."

29. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose whether Ms. Clark has any "symptoms of any mental disorder."

30. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose whether Ms. Clark had ever been treated in a mental hospital.

31. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose and describe Ms. Clark's usage of "alcohol or drugs."

32. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose

whether Ms. Clark is "mentally deficient."

33. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose whether Ms. Clark has a "history of diabetes."

34. Through the form, the State of Louisiana demanded that Ms. Clark's doctor disclose whether Ms. Clark has had any visual, rental, vascular, or neurological "abnormalities."

35. Through the form, the State of Louisiana demanded that Ms. Clark's also go to an optometrist or ophthalmologist and complete a lengthy disclosure related to her vison levels, both with and without corrective lenses.

36. Most, if not all, of the above information is entirely irrelevant to Ms. Clark's ability to operate a motor vehicle.

37. Even worse, the State of Louisiana demanded that Ms. Clark authorize the State to use and disseminate the above information to any "individuals or groups" that the State considers "necessary and appropriate." Specifically, the form provides a release statement above a signature line which reads as follows: "the Louisiana Department of Public Safety and Corrections can release this information to such individuals or groups as may be considered necessary and appropriate to determine my ability to safely operate a motor vehicle."

38. After reading the above form, Ms. Clark returned to the OMV to speak with a supervisor regarding why she was asked to complete the lengthy form and irrelevant information. Ms. Clark was accompanied by her boyfriend, Mr. Philip Emden.

39. Ms. Clark asked to speak to a manager. Ms. Clark spoke with floor supervisor by the name of "Kathy" who is believed to be of badge number 797.

40. Ms. Clark asked the floor supervisor whether she actually had to complete all of the form, even though the majority of it did not relate to her disability. The floor supervisor would

5

not state whether Ms. Clark was obligated to complete the entirety of the form.

41. In response to the floor supervisor's refusal to permit Ms. Clark to complete a limited version of the form, Ms. Clark responded by stating "this is discrimination."

42. In response Ms. Clark's statement that she was being discriminated against, Defendants' floor supervisor openly mocked and threated Ms. Clark by stating "Well don't fill out the form and see what happens in thirty days."

43. Shocked at the entire situation, and with no alternative accommodation offered by the floor supervisor, Ms. Clark left the Office of Motor Vehicles facility.

44. Not wanting her license to be suspended, Ms. Clark begrudgingly had her physician complete the lengthy and invasive form.

45. Ms. Clark had to pay $40.00 co-pay to her doctor to have the form completed.

46. Additionally, Ms. Clark missed three days of work between the time that was taken up at the Office of Motor Vehicles facility, a visit to her doctor, and her return visit to file the form.

**B.   Ms. Clark Investigates and Learns That There is No Reasonable Basis for the State's Collection of Any of the Information on the Form.**

47. Upset that her rights under the ADA had been violated, Ms. Clark reported the issue to the State inspector general's office. After exchanging emails with the State inspector general's office, an individual from the State inspector general's office followed up with the Office of Motor Vehicles and a manager of the "medical unit" contacted Ms. Clark.

48. The manager of the medical unit said it is their policy to issue the Medical/Vision Examination Form to anyone with a visible disability and that it was an oversight that Ms. Clark had not been issued one at any point in the last three years.

49. The manager of the medical unit said that Ms. Clark should not have been required to complete any part of it. The manager agreed that some of the questions are not relevant to the

6

ability to drive safely and said it would be "worth looking at" whether to remove some of the questions.

50. Ms. Clark then asked whether a nurse or physician or any medical professional reviewed the information.

51. In response, the manager sounded confused and said "no, just us."

52. Upon information and belief, State of Louisiana's bureaucrats are not qualified to interpret the detailed medical information that the State of Louisiana is collecting from individuals with disabilities.

53. Thus, despite lacking the ability to even meaningfully evaluate the data, the State of Louisiana is coercing individuals with disabilities into disclosing the minutiae of their medical conditions. The State of Louisiana is collecting this information using threats and mockery. And the State demands that individuals with disabilities authorize the State to disclose this information to any "individuals or groups" that it considers "necessary and appropriate."

    **C.**    **Ms. Clark Was Subjected to Discrimination Under Title II of the ADA and The Rehabilitation Act**

54. By and through the State of Louisiana's conduct detailed above, Ms. Clark was subjected to discrimination under the ADA/RA.

55. Almost twenty years ago, the First Circuit noted that applying an addition on an application simply because she has a disability is not acceptable conduct under the ADA. <u>Theriault v. Flynn</u>, 162 F.3d 46, 49 (1st Cir. 1998).

56. Despite the passage of more than twenty years, the State of Louisiana is actively subjecting persons with disabilities to disparate treatment on the basis of their disability.

57. As is set forth above, the State of Louisiana has adopted a policy under which it can unliterally "eyeball" a person with a disability and demand that they provide exhaustive and

extensive personal information. Non-disabled persons, and persons with disabilities who do not "look disabled," are not subject to this invasion of their privacy.

58. By and through the above procedures, the State of Louisiana has developed a policy/procedure where individuals with mobility-related disabilities are singled out and treated differently solely on account of their disability.

59. Further, upon information, the State of Louisiana has acted arbitrarily and has relied upon happenstance and guesswork in implementing this policy. Specifically, the State of Louisiana's OMV clerks are understood by Ms. Clark to be poorly trained and to inconsistently distribute the medical form.

60. Ms. Clark made a request to the OMV floor supervisor that she only be required to complete a segment of the form related to her disability. While referencing the State of Louisiana's demand that she complete the entire medical form, Ms. Clark also stated "this is discrimination." Through her statements, Ms. Clark requested a reasonable accommodation under ADA/RA.

61. Instead of providing Ms. Clark with her requested accommodation/modification, the State of Louisiana chose to respond by outright denying Ms. Clark's request for reasonable accommodation.

62. The State's employee offered no explanation for her denial of Ms. Clark's request for accommodation and, in fact, mocked and threatened Ms. Clark when she challenged the illegal conduct.

63. In addition to failing to provide a needed reasonable accommodation/modification, the State of Louisiana refused and/or failed to engage in an interactive dialogue or otherwise work with Ms. Clark to develop an alternative accommodation.

64. By and through its conducted, the State of Louisiana limited a qualified individual

8

with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

65. By and through its conducted, the State of Louisiana utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability.

66. By and through its conducted, the State of Louisiana administered a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.

67. By and through its conducted, the State of Louisiana established requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability.

68. By and through its conducted, the State of Louisiana imposed or applied eligibility criteria that screen out or tend to screen out an individual with a disability.

69. By and through her interaction with the OMV staff members and floor manager, Ms. Clark gave the State of Louisiana notice of disability, limitations, and needed accommodation. The State of Louisiana had an opportunity to accommodate Ms. Clark or engage in an interactive dialogue to agree upon an alternative accommodation.

70. By and through its conducted, the State of Louisiana denied Ms. Clark services on account of her disability. By refusing to reprint Ms. Clark's license with the updated license on September 20, 2019, Ms. Clark was denied services on account of her disability.

71. The State of Louisiana made an intentional choice to deny Ms. Clark's request for reasonable accommodation.

72. The State of Louisiana had notice of Ms. Clark's disability, limitations, and need

for accommodation, but nonetheless chose to deny Ms. Clark's request for reasonable accommodation.

73. By and through the acts set for above, the State of Louisiana committed "intentional discrimination" has that phrase is understood under Fifth Circuit case law.

## V.  CLAIMS FOR RELIEF

### Violation of the ADA and the Rehabilitation Act
### (All Defendants)

74. Ms. Clark realleges and incorporates each and every foregoing paragraph.

75. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

76. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.  The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

77. Title II of The Americans with Disabilities Act and Section 504 of the Rehabilitation Act require that public entities affirmatively ensure that disabled people have meaningful access to programs provided.

78. At all relevant times, The State of Louisiana, Department of Public Safety & Correction, Office of Motor Vehicles received federal funds.

79. By refusing to provide Ms. Clark a reasonable accommodation, the State of Louisiana violated Title II of the Americans with Disabilities Act and the Rehabilitation Act.

80. By failing to modify their policies, procedures, or rules to accommodate Ms. Clark, the State of Louisiana violated the ADA and the Rehabilitation Act.

81. By failing to engage in an interactive dialogue, the State of Louisiana violated the ADA and the Rehabilitation Act.

82. The State of Louisiana uses eligibility criteria that tend to screen out people with disabilities. 28 C.F.R. § 35.130(b)(8).

83. The State of Louisiana failed to provide Ms. Clark with meaningful access to the services at issue in this case.

84. The State of Louisiana failed to provide Ms. Clark with program access to the services at issue in this case.

85. The State of Louisiana discriminated against Ms. Clark with deliberate indifference to her needs as an individual with a disability.

86. Based on the facts alleged above, the State of Louisiana intentionally discriminated against Ms. Clark.

87. Further, the State of Louisiana was purposeful in its choices, which is sufficient to constitute intentional discrimination under the RA and ADA.

88. Ms. Clark suffered the following compensable damages: emotional distress, isolation, segregation, loss of opportunity, and invasion of her civil rights.

89. The harm sustained by Ms. Clark herein is the expected and foreseeable consequence of the State of Louisiana's failure to comply with the requirements and mandates of the ADA and RA. These statutes and accompanying regulations exist to ensure that those with communication limitations will have full use of places of the programs, services, and activities offered by individuals with disabilities. When the State of Louisiana failed to adhere to its

obligations under the statutes and implementing regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Clark in this lawsuit.

## VI. RELIEF REQUESTED

90. Wherefore Ms. Clark requests judgment be entered against the State of Louisiana and that the Court grant the following:

   a. Declaratory relief.

   b. A permanent injunction requiring Defendants to comply with the requirements of the ADA/RA and to provide the appropriate accommodations and auxiliary aids and services to Ms. Clark and others with disabilities.

   c. Judgment against the State of Louisiana for Ms. Clark's asserted causes of action.

   d. Award nominal and compensatory damages under the ADA/Rehabilitation Act against the Department of Corrections and Public Safety.

   e. Award costs and attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b).

   f. Issue an order retaining jurisdiction over this matter to ensure that the terms of any injunction are fully implemented.

   g. Order such other and further relief, at law or in equity, to which Ms. Clark may be justly entitled.

Respectfully submitted, this Tuesday, January 7, 2020

[Signature block on following page]

/s/ Garret S. DeReus
BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996