UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CAROLYN CLARK                                                    CIVIL ACTION

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC                     NO. 20-00011-BAJ-SDJ
SAFETY & CORRECTIONS, ET AL.

RULING AND ORDER

Before the Court are two motions. The first is the **Motion for Summary Judgment (Doc. 34)**, filed by Defendants, State of Louisiana, Department of Public Safety and Corrections, Office of Motor Vehicles ("OMV") and Secretary James LeBlanc, in his official capacity as Secretary of the Department of Public Safety and Corrections. The Motion is opposed. (Doc. 37). Defendants filed a Reply. (Doc. 39).

The second motion is **Plaintiff's Motion for Partial Summary Judgment. (Doc. 38)**. That Motion is also opposed. (Doc. 40). Plaintiff filed a reply. (Doc. 41).

For the reasons discussed below, Defendants' Motion for Summary Judgment will be **GRANTED**. Plaintiff's Motion for Partial Summary Judgment will be **DENIED**.

I.   BACKGROUND

A. Alleged Facts

This action arises from a dispute between Plaintiff Carolyn Clark and the OMV regarding alleged discrimination based on disability and the OMV's failure to provide reasonable accommodations to Plaintiff. (Doc. 1). Plaintiff seeks damages, injunctive

1

relief, and declaratory relief to remedy alleged violations of her rights under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et. seq.* and Section 504 of the Rehabilitation Act of 1973, 28 U.S.C. § 794, *et. seq. (Id.* at ¶¶ 90).

On September 20, 2019, Plaintiff visited the OMV to update the address on her driver's license and car registration. (Doc. 1 at ¶ 20). Plaintiff is an individual with a disability that impairs her ability to stand or walk, which are major life activities. (Doc. 1 at ¶¶ 9–11); (Doc. 40, p. 4). For this reason, Plaintiff uses a wheelchair for mobility. (Doc. 38-1, p. 11). The employee assigned to assist Plaintiff at the OMV did not immediately renew Plaintiff's license and registration, but instead provided her with a medical form to be completed by her doctor and with the instruction that she return the form within thirty days. (Doc. 1 at ¶¶ 22–23). The form contained questions regarding Plaintiff's "history of past surgical procedures, all current medications and dosages, any medical or physical disorders, blood pressure reading, pulse rate, whether [she has] a mental disorder or [has] been treated in a mental hospital, usage of alcohol or drugs, whether [she has] a history of diabetes, recent urine sugars, and recent blood sugars, among others." (Doc. 37, p. 2). Consistent with the OMV's Policy 1.23.00, Plaintiff was asked to fill out the medical form because she was using a wheelchair during her visit. (Doc. 40, p. 11); (Doc. 34-2, p. 5).

On a later date, Plaintiff spoke with an OMV employee, Katherine Kidder, about the form. (Doc. 1 at ¶ 39); (Doc. 34-5, p. 49–51). Plaintiff asked if she was required to fill out the form in its entirety, to which Kidder provided an inconclusive response. (Doc. 1 at ¶ 40); (Doc. 33-1, p. 37). Plaintiff then stated, "this is

2

discrimination." (Doc. 1 at ¶ 41).

## B. Procedural History

On January 7, 2020, Plaintiff filed suit alleging that the following acts or omissions violated Title II of the ADA[1] Section 504 of the RA.[2]

1. Defendants' failure to provide Plaintiff with meaningful access to services;

2. Defendants' failure to provide the reasonable accommodation of permitting Plaintiff to only complete the segment of the form related to her disability;

3. Defendants' failure to engage in an interactive process to identify and determine alternative reasonable accommodations; and

4. Defendants' failure to modify their policies, procedures, or rules to accommodate Plaintiff.

(Doc. 1 at ¶ 60–83, Doc. 37, p. 3–4).

Plaintiff also alleges that Defendants intentionally discriminated against her in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. (Doc. 1 at ¶ 86).

In seeking summary judgment on all of Plaintiff's claims, Defendants allege that Plaintiff has not established that (1) the Louisiana OMV discriminates against

---

[1] Title II prohibits discrimination against people with disabilities in services, programs, or activities of a public entity, "by reason of such disability," 42 U.S.C. § 12132

[2] "Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc).

people with disabilities by requiring these individuals to provide allegedly unnecessary medical information to the OMV through a medical form, (2) that Defendants discriminated against Plaintiff by failing to provide a requested reasonable accommodation, and (3) that all discrimination against Plaintiff was intentional. (Doc. 34-2, p. 8).

Plaintiff moves for partial summary judgment solely as to her first claim. Plaintiff prays for relief in the form of an injunction requiring the OMV to comply with the requirements of the ADA and to provide necessary accommodations for all customers with disabilities. (Doc. 38-1, p. 1). Plaintiff seeks nominal and compensatory damages for the latter two claims but does not move for these matters to be considered on summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting that a fact cannot be genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers," or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* FED. R. CIV. P. 56(c)(1).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to

go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of [Defendant's] Motion, and therefore, the Court could grant [Defendant's] Motion for Summary Judgment on this basis alone.").

## III.   ANALYSIS

### A. Medical/Vision Form Requirement

"The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" *Frame* 657 F.3d at 223 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). Title II, in particular, "focuses on disability discrimination in the provision of public services." *Frame*, 657 F.3d at 224. Section 504 of the Rehabilitation Act complements Title II by "prohibit[ing] disability discrimination by recipients of federal funding." *Id.* "A primary purpose of Title II was to extend the reach of the Rehabilitation Act to all public entities, regardless of whether or not they receive federal funds." *Wagner v.*

*Texas A & M Univ.*, 939 F. Supp. 1297, 1309 (S.D. Tex. 1996) (citation omitted).

"The ADA and the Rehabilitation Act generally are interpreted *in pari materia.*" *Frame*, 657 F.3d at 223. Therefore, these laws "are judged under the same legal standards, and the same remedies are available under both." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). Accordingly, although this Court focuses primarily on Title II, the Court's analysis is informed by the Rehabilitation Act, and the Court's holding applies to both statutes. *See Frame*, 657 F.3d at 224.

To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate:

> (1) that [s]he is a qualified individual within the meaning of the ADA;
> (2) that [s]he is being excluded from participation in, or being denied
> benefits of, services, programs, or activities for which the public entity
> is responsible, or is otherwise being discriminated against by the public
> entity; and (3) that such exclusion, denial of benefits, or discrimination
> is by reason of [her] disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (citing *Lightbourn v. Cnty of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997)).

It is undisputed that Plaintiff is a qualified individual within the meaning of the ADA and RA. However, Defendants allege that Plaintiff failed to demonstrate that she was denied benefits of or excluded from participation in a program because "Plaintiff got a renewal driver's license." (Doc. 34-2, p. 9). The Fifth Circuit defined "program or activity" under both the ADA and the RA as "all of the operations of . . . a local government." *Frame*, 657 F.3d at 225. Plaintiff counters that Defendants' view of the ADA is "excessively narrow," and that she was "otherwise subject[ed] to

6

discrimination," in violation of the ADA and RA when she was forced to complete the entire Medical/Vision form. (Doc. 37, p. 20). "Discrimination on the basis of disability differs from discrimination in the constitutional sense." *Melton*, 391 F.3d at 672 (citation omitted). To determine whether OMV discriminated against Plaintiff on the basis of her disability, courts should examine the ADA and RA, and their definitions of discrimination. *Id.* To support her ADA claim, Plaintiff argues that the OMV placed an "unnecessary burden" on her by requiring her "to complete the medical form even through most of the requested information was unnecessary to the [it's] assessment of [her] ability to safely drive." (Doc. 9, ¶ 36).

According to ADA Guidance a public entity may "impose neutral rules and criteria that screen out, or tends to screen out, individuals with disabilities if the criteria are necessary for the safe operation of the program in question . . . [including] eligibility requirements for drivers' licenses." Appendix B to CFR Part 35 – Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services. However, those qualifications "must be based on actual risks and not on speculation, stereotypes, or generalizations about individuals with disabilities." *Id.*[3] In a similar case, the United States Court of Appeals for the First Circuit has instructed that "[t]he ADA . . . does not protect disabled individuals from all differences in treatment stemming from their disabilities, and it certainly does not

---

[3] "A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability. The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part." 28 C.F.R. § 35.130

require licensing officials to refrain from evaluating safety risks because an applicant appears to be disabled." *Theriault v. Flynn*, 162 F.3d 46, 50 (1st Cir. 1998). The First Circuit allowed the New Hampshire Department of Public Safety to require a road test for an individual who appeared to be disabled, without any substantial information that he posed a particular risk to public safety. *Theriault v. Flynn*, 162 F.3d 46, 50 (1st Cir. 1998). The Court noted that "[w]hen . . . symptoms concededly and objectively raise a concern about qualifications . . . the public entity properly may engage in an individualized inquiry into whether the person is nonetheless qualified without shouldering the burden of defending its 'discrimination' as 'necessary.'" *Theriault v. Flynn*, 162 F.3d 46, 50 (1st Cir. 1998).

Consistent with the OMV's Policy 1.23.00, Plaintiff was given the "Medical/Vision Form" because she arrived at the OMV on the date in question in a wheelchair. The Medical/Vision Form was developed with the intention of protecting the public by limiting licensing of physically handicapped persons to those who have medical reports indicating that they are capable of safe driving. *See* La. R.S. § 32:403.2. It is undisputed that Plaintiff suffers from a condition which may cause her to lose consciousness, faint, or lose strength, all of which are relevant to her ability to drive. See (Ex. 1, 27:2-11).[4] In fact, most of the information provided by her treating physician was in the Cardiopulmonary section of the form, which by

---

[4] Plaintiff suffers from postural orthostatic tachycardia syndrome or POTS a "disorder of the autonomic nervous system. So your autonomic nervous system controls things like your heart rate, breathing, blood pressure, all of that kind of like unconscious stuff. So with POTS, normally when you change positions, like when you stand up, you have to have a slight increase in your heart rate and blood pressure to fight gravity, and I don't. So my blood flow doesn't continue when – sufficiently when I'm standing, which leads to fainting." Ex. 1, 27:2-11.

8

her own admission is at issue. See Doc. 36-1; see also Doc. 33-2. Moreover, most questions only contain the answers "No" or "N/A." See Doc. 33-2. While the form requested more information, although no more than is necessary, none was provided to allow the OMV to determine whether Plaintiff was qualified to safely operate a motor vehicle.

## B. Plaintiff's Request for a Reasonable Accommodation

Title II requires public entities to make "reasonable modifications in policies, practices, or procedures." *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 618 (5th Cir. 2020). However, it "does not require States to compromise their essential eligibility criteria for public programs"—"[i]t requires only reasonable modifications," and "only when the individual seeking modification is otherwise eligible for the service." *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 618 (5th Cir. 2020). Plaintiff claims that she made a request for reasonable accommodations when she asked the Office of Motor Vehicles floor supervisor that she only be required to complete the portions of the form related to her disability. (Doc. 9 ¶60.) However, "[r]equesting an excuse from an eligibility requirement is not a reasonable modification, particularly when the requirement is motivated by a desire to protect the public on the state highways." *Coolbaugh v. State of La. on Behalf of Louisiana Dep't of Pub. Safety & Corr. on Behalf of Louisiana Dep't of Motor Vehicles*, 136 F.3d 430, 439 (5th Cir. 1998) ("Perhaps the clearest one that is fully supported by the evidence is that the state's refusal to issue Mr. Coolbaugh a driver's license based on his possession of a California license was not motivated, even in part, by its desire to

9

discriminate against him because of his disability. Rather, its decision was motivated by a desire to protect the public on the state's highways.") Plaintiff requested that "she only be required to complete a segment of the form related to her disability." Doc. 9 ¶60. Plaintiff's requested accommodation was not necessary. According to OMV Policy 1.23.00, the Form must be completed and "address the medical concern(s) for which it was required." Doc. 34-4. Plaintiff's physician only completed those sections applicable to Plaintiff's condition, a required by OMV policy, and responded "N/A" in response to other questions on her Medical/Vision Form that were deemed nonessential to her application. No other nonessential information was disclosed by her physician. Plaintiff has failed to carry her burden of showing that she was entitled to an accommodation that, in essence, would have allowed her to decline to complete the required portion of the form.

## C. Intentional Discrimination

To receive compensatory damages for violations of Title II of the ADA, Plaintiff must show that the discrimination was intentional in the sense that it resulted in more than disparate impact. *Windham v. Harris Cty., Texas*, 875 F.3d 229, 235 n. 5 (5th Cir. 2017) (citing *Delano–Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002). As the Fifth Circuit has explained, intentional discrimination exists where a defendant has knowledge of the plaintiff's disability and a required accommodation but fails to adequately accommodate the plaintiff. *See Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 575 (5th Cir. 2018) ("Instead, we can rely on the widely accepted principle that intent requires that the defendant at least have actual notice of a violation."). Here, Defendant had knowledge of Plaintiff's disability.

However, as noted, Plaintiff was not entitled to the accommodation she requested.

Plaintiff's physician only provided information relative to Plaintiff's condition.  No

information was provided that went beyond her disability status. See Doc. 33-2.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 34)

is **GRANTED** and all claims against Defendants are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary

Judgment (Doc.38) is **DENIED** for the reasons provided herein.

Baton Rouge, Louisiana, this 2nd day of November, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**